# In The United States Court of Federal Claims

No. 05-296T

(Filed:  July 17, 2007)
_____

| | |
|---|---|
| GRAPEVINE IMPORTS, LTD, and<br>T-TECH, INC., as Tax Matters Partner,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | * TEFRA partnership proceeding; Six-year<br>* statute of limitations under section<br>* 6501(e)(1)(A) of the Internal Revenue Code;<br>* Application of section 6501(e)(1)(A) where<br>* taxpayer allegedly understates gross income<br>* owing to an overstatement of basis; *Colony* –<br>* section 275(c) of the 1939 Code; Binding<br>* precedent; *Colony* rationale applicable to<br>* construction of 1954 Code provision;<br>* Overstating basis of property sold not an<br>* omission for purposes of section<br>* 6501(e)(1)(A); 1999 assessments time-barred<br>* under section 6501(a) of the Code; 2000<br>* assessments unaffected. |

_____

## OPINION
_____

*M. Todd Welty*, Meadows, Owens, Collier, Reed, Cousins & Blau, L.L.P., Dallas, Texas, for plaintiffs.

*Grover Hart, III*, Tax Division, United States Department of Justice, Dallas, Texas, with whom was Assistant Attorney General *Eileen J. O'Connor*, for defendant.

**ALLEGRA, Judge:**

This is the second leg of a case having its genesis in a series of transactions that purportedly gave partners a substantial positive basis in their partnership interests, ultimately leading them to claim losses upon the disposition of those interests.  Two sets of potential adjustments are at issue – one set relates to the partners' 1999 taxable year, while the other involves their 2000 taxable year.  As to the latter year, the court, in the first leg of this case, held that section 6229 of the Internal Revenue Code of 1986 (26 U.S.C.) (the Code) did not create an independent statute of limitations, but rather operated as a minimum period for assessment for partnership items that could extend the time period set forth in section 6501(a) of the Code. *Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324 (2006).  The court now must resolve whether the limitations period for assessing taxes as to the partners' 1999 taxable year has run or instead was extended under section 6501(e)(1)(A) of the Code, which gives the Internal Revenue

Service (IRS) three additional years in which to impose assessments in the case of certain omissions from gross income.  For the reasons that follow, the court concludes that the latter savings provision does not apply and that any 1999 assessments here, therefore, would be untimely.

I.    **BACKGROUND**

In March of 1996, Joseph J. Tigue and Virginia B. Tigue formed a partnership called Grapevine Imports, Ltd. (Grapevine).  On April 19, 2000, Grapevine filed its partnership return for 1999, showing a net short-term loss of $21,884.  On or before April 15, 2000, the Tigues jointly filed their 1999 joint income tax return, which, owing, in part, to transactions involving the partnership, showed a total loss of $973,087.  The Tigues carried this 1999 loss forward to future taxable years, along with a $1,127,481 net operating loss carryover from 1998.  *See* 26 U.S.C. § 172(b) (governing net operating loss carrybacks and carryovers).  On August 17, 2001, the Tigues jointly filed their 2000 tax return in which the 1998 net operating loss had the effect of eliminating what otherwise would have been taxable income of $730,161.

On June 19, 2003, the IRS issued a John Doe summons to the Tigues' tax consultants, Jenkens & Gilchrist (Jenkens).  Jenkens resisted this summons, and the Department of Justice filed a summons enforcement action in the United States District Court for the Northern District of Illinois.  On May 14, 2004, the court ordered Jenkens to honor the summons within three days, which it did.

On December 17, 2004, the IRS issued a notice of final partnership administrative adjustment (FPAA) to Grapevine's tax matters partner,[1] T-Tech, adjusting the partners' basis in Grapevine by $10,000,000 for the 1999 tax year.  No statutory notices of deficiency were issued to the Tigues.  On March 8, 2005, Joseph Tigue, as the sole owner of T-Tech, remitted deposits of $1,594,205 and $221,170 for tax years 1999 and 2000, respectively, in accordance with section 6226(e) of the Code.  On March 11, 2005, plaintiffs filed their complaint in this court for readjustment of partnership items under section 6226(a) of the Code, requesting that the court either declare the FPAA invalid or, alternatively, order defendant to reverse the adjustments set forth therein.

On October 21, 2005, plaintiffs filed a motion for summary judgment asserting that the FPAA's proposed adjustment was time-barred under section 6229(a) of the Code.  For purpose of this motion (and only for that purpose), plaintiffs stipulated that the basis that the Tigues used to

---

[1]  Under section 6231(a)(7) of the Code, the "tax matters partner," or TMP, generally is either "the general partner designated as the tax matters partner as provided in the regulations" or if no such partner has been designated, "the general partner having the largest profits interest in the partnership at the close of the taxable year involved."  For a fuller discussion of the partnership audit provisions of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324 (TEFRA), *see Keener v. United States*, 76 Fed. Cl. 455, 458-59 (2007).

calculate their losses with respect to the transaction involving Grapevine was overstated.  On November 28, 2005, defendant responded with a cross-motion for partial summary judgment. On June 14, 2006, this court ruled that section 6229(a) does not establish a limitations period that is separate and apart from the general three-year statute of limitations on income tax assessments with respect to individual partner assessments.[2]  The court accordingly found that the issuance of the December 14, 2004, FPAA suspended the running of the general three-year statute of limitations with respect to individual partner assessments for tax year 2000.  As to 1999, however, the court expressed concerns that factual issues might prevent it from determining whether plaintiff was subject to the special statute of limitations contained in section 6501(e)(1)(A) of the Code, which applies a six-year assessment limitations period to any taxpayer that nonfraudulently "omits from gross income an amount properly includible therein which is in excess of 25 percent" of the reported gross income.

An evidentiary hearing regarding the applicability of section 6501(e)(1)(A) was conducted on January 18, 2007, at which plaintiffs presented expert testimony.

## II.   DISCUSSION

At issue is whether the IRS' proposed adjustments to the Tigues' 1999 taxable year are time-barred.

Under the general rule set forth in section 6501(a) of the Code, the IRS is required to assess tax (or send a notice of deficiency) within three years after a Federal income tax return is filed.  *See Keener*, 76 Fed. Cl. at 458; *Grapevine Imports*, 71 Fed. Cl. at 328.  As to the Tigues' 1999 taxable year, this three-year statute of limitations clearly ran before the issuance of the FPAA here.  As noted, however, defendant has invoked an exception to this rule, contained in section 6501(e)(1)(A) of the Code, which applies a six-year assessment limitations period to any taxpayer that nonfraudulently "omits from gross income an amount properly includible therein which is in excess of 25 percent" of the reported gross income.  *See Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 392 (1984).  If this provision applies, the assessment here would be timely – the FPAA was sent within this six-year statute of limitations and the FPAA, by reason of section 6229(d), suspended the period of limitations applicable to the assessment of liabilities of the partners.

Section 6501(e)(1)(A) was first enacted as section 275(c) of the Revenue Act of 1934, 48 Stat. 680, 745.  *See Badaracco*, 464 U.S. at 392.  In 1954, Congress made several changes to this provision.  *See* H.R. Rep. No. 83-1337, at A414 (1954); S. Rep. No. 83-1622, at 584-85 (1954). First, under section 6501(e)(1)(A)(i), it defined "gross income" to mean the "total of the amounts received or accrued from the sale of goods or services . . . prior to diminution by the cost of such

---

[2]  This correctness of this ruling was subsequently confirmed by the Federal Circuit in *AD Global Fund, LLC ex rel. N. Hills Holding, Inc. v. United States*, 481 F.3d 1351 (Fed. Cir. 2007), *aff'g* 67 Fed. Cl. 657 (2005).

sales or services."  Second, it crafted a safe harbor under section 6501(e)(1)(A)(ii), stating that
the amount omitted from gross income shall not include "any amount which is omitted from
gross income stated in the return if such amount is disclosed in the return, or in a statement
attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of
such item."  Language paralleling section 6501(e)(1)(A) – but without the special rule and
exception adopted in 1954 – may be found in section 6229(c)(2), which extends the period in
section 6229(a) from three to six years "[i]f any partnership omits from gross income an amount
properly includible therein which is in excess of 25 percent of the amount of gross income stated
in its return."  *See also* 26 U.S.C. § 6248(c)(2) (providing a similar rule for certain large
partnerships).

Before turning to the facts here, it is necessary to understand better what the statute
requires, a path that initially takes us to *Colony, Inc. v. Comm'r of Internal Revenue*, 357 U.S. 28
(1958).  In that case, tax deficiencies were based upon assertions that the taxpayer had
understated the gross profits on sales of certain lots of land by overstating its basis therein.  The
taxpayer claimed that the predecessor of section 6501(e)(1)(A), section 275(c) of the 1939 Code,
did not apply in this situation because Colony had not entirely omitted an item of income from its
return.  Agreeing, Justice Harlan, writing on behalf of the majority, focused initially on the
statute's use of the word "omits," which, he noted, had commonly been defined as "'[t]o leave
out or unmentioned; not to insert, include or name.'"  *Id.* at 32-33 (quoting Webster's New
International Dictionary (2d ed. 1939) and citing *Ewald v. Comm'r of Internal Revenue*, 141 F.2d
750, 753 (6th Cir. 1944)).  But Justice Harlan refused to conclude, on this basis alone, that the
statute covered only items that were entirely omitted from a return (rather than being listed and
misreported), finding that other phrases in the statute – for example, the reference to omitting "an
amount" from "gross income" – created an ambiguity.  To resolve this ambiguity, he turned to
the statute's legislative history.  As evidence that Congress intended the statute only to apply to
items entirely omitted from returns, he cited the portion of the accompanying Senate Report that
indicated that the longer limitations provision was to apply where a taxpayer "failed to report" an
income item, noting that the report gave several examples, *e.g.*, "where a taxpayer failed to report
a dividend."  357 U.S. at 35 (quoting S. Rep. No. 73-558, at 43-44 (1934)).  Justice Harlan also
quoted from the accompanying House Report, which indicated that the provision should be
triggered where "'taxpayers . . . are so negligent as to leave out of their returns items of such
magnitude.'"  357 U.S. at 34 (quoting H.R. Rep. No. 73-704, at 35 (1934)).

In light of this and other legislative history (principally floor debates), the Court rejected
the Commissioner's claim that the statute addressed any significant error that caused the amount
of gross income to be understated.  This theory was not persuasive, the Court held, "[f]or if the
mere size of the error had been the principal concern of Congress, one might have expected to
find the statute cast in terms of errors in the total tax due or in total taxable net income."  *Id.* at
36.  The Court further reasoned-

> We think that in enacting § 275(c) Congress manifested no broader purpose than
> to give the Commissioner an additional two years [now three years] to investigate

tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item. On the other hand, when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage. And this would seem to be so whether the error be one affecting "gross income" or one, such as overstated deductions, affecting other parts of the return.

*Id* at 36-37.[3] It concluded that "[t]o accept the Commissioner's interpretation and to impose a five-year [now six-year] limitation when such errors affect 'gross income,' but a three-year limitation when they do not, not only would be to read § 275(c) more broadly than is justified by the evident reason for its enactment, but also to create a patent incongruity in the tax law." *Id*. at 36-37. The Supreme Court finally observed that its conclusion was "in harmony" with the then recently enacted (as part of the 1954 Code) "unambiguous language" of section 6501(e)(1)(A). *Id*. at 37; *see also Grapevine Imports,* 71 Fed. Cl. at 341-42 (discussing *Colony*).

In the wake of *Colony*, a judicial debate erupted over whether the 1954 version of section 6501(e)(1)(A) is triggered only where an item of income is entirely omitted from a return. As this court noted in its prior opinion, 71 Fed. Cl. at 341, several cases have questioned the continuing viability of *Colony* in light of the 1954 amendments to section 6501(e)(1)(A). For example, in *CC&F W. Operations L.P. v. Comm'r of Internal Revenue*, 273 F.3d 402, 406 (1st Cir. 2001), the First Circuit stated that "[w]hether *Colony*'s main holding carries over to section 6501(e)(1) is at least doubtful," suggesting that Justice Harlan's gross receipts test applies only to sales of goods and services covered by section 6501(e)(1)(A)(i), but not to other types of income. *Id*. at 406 n.2; *see also In re G-I Holdings, Inc.*, 2006 WL 2595264, at *5-6 (D.N.J. Sept. 8, 2006) (reaching the same conclusion). At one point, various Tax Court cases also limited the rationale in *Colony* to the sale of goods or services by a trade or business. *See, e.g.*, *Insulglass Corp. v. Comm'r of Internal Revenue*, 84 T.C. 203, 210 (1985); *Schneider v. Comm'r of Internal Revenue*, 49 T.C.M. 1032, 1034-35 (1985).[4] More recently, however, that court has rejected

_____

[3]   Previously, several circuits had narrowly construed the term "omits." *See Goodenow v. Comm'r of Internal Revenue*, 238 F.2d 20, 21-22 (8th Cir. 1956); *Davis v. Hightower*, 230 F.2d 549, 553-54 (5th Cir. 1956) (statute inapplicable where taxpayer understated income because of a "difference between him and the Commissioner as to the legal construction to be applied to a disclosed transaction"); *Slaff v. Comm'r of Internal Revenue*, 220 F.2d 65, 68 (9th Cir. 1955); *Deakman-Wells Co. v. Comm'r of Internal Revenue*, 213 F.2d 894, 897 (3d Cir. 1954) (section 275(c) "applies only where the taxpayer has failed to make a return of some taxable gain, where he has altogether omitted an item from the income reported"); *cf. Reis v. Comm'r of Internal Revenue*, 142 F.2d 900, 903-04 (6th Cir. 1944).

[4]   *Inter alia*, these cases emphasize that the term "gross income" has a well-accepted meaning in the Code and, apart from the exception contained in section 6501(e)(1)(A)(i), ought

attempts to "distinguish and diminish the Supreme Court's holding in [*Colony*]," noting that it does "not believe that either the language or the rationale of *Colony, Inc.* can be limited to the sale of goods or services by a trade or business." *Bakersfield Energy Partners, LP v. Comm'r of Internal Revenue*, 2007 WL 1712543, at *7 (Tax Ct. June 14, 2007). In concluding that an overstated basis did not trigger the provision, the Tax Court noted that "the Supreme Court held that 'omits' means something 'left out' and not something put in and overstated.'" *Id*.

As the Federal Circuit recently reminded, "[t]here can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims," adding that this rule applies even if the "decisions of the Supreme Court have been eroded." *Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1353 (Fed. Cir. 2006), *cert. denied*, 127 S.Ct. 1261 (2007); *see also Hohn v. United States*, 524 U.S. 236, 252-53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."); *Stone Container Corp. v. United States*, 229 F.3d 1345, 1349-50 (Fed. Cir. 2000), *cert. denied*, *Smurfit-Stone Container Corp. v. United States*, 532 U.S. 971 (2001). The question here, of course, is whether the Supreme Court's construction of the 1939 Code is precedential as to the 1954 version of section 6501(e)(1)(A), so as to bind this court's construction of the latter. The answer appears to be yes, even though a few questions linger as to the correctness of the Supreme Court's ruling.[5] Several reasons militate in favor of treating this precedent as controlling.

First, the rationale employed in *Colony*, which focused on the meaning of the word "omits," has as much application to the 1954 version of the statute, as it did the 1934 version, for, in both, that word is pivotal. From a "plain meaning" standpoint, there is utterly no

---

to include, among other things, gains deriving from dealings in property. *See Insulglass*, 84 T.C. at 210 ("In the case of a trade or business, 'gross income' is equated with gross receipts. Otherwise, 'gross income' means those items listed in section 61(a), which includes, among other things, gains derived from dealings in property.").

[5] Among other things, the Court in *Colony* seemingly downplayed the portions of the legislative history that suggested that the statute applies simply where a taxpayer "understates gross income." S. Rep. No. 73-558 at 43-44; H.R. Rep. No. 73-704 at 35; *see* Robert J. Richards, Jr., "The Extended Statute of Limitations on Assessment," 12 Tax. L. Rev. 297, 311 (1957) (hereinafter "Richards") ("When the words of the statute are read in the light of the Committee Reports taken as a whole, it is difficult to understand why such a limited meaning is placed on 'omits.'"). Further, while the legislative history that the Court relied upon includes examples of when section 275(c) was to apply, *e.g.*, "where a taxpayer failed to report a dividend," S. Rep. No. 73-558 at 44, those same examples were less than clear in indicating when the provisions should not apply. *See Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 649 (1990) ("[T]he language of a statute . . . is not to be regarded as modified by examples set forth in the legislative history. An example, after all, is just that: an illustration of a statute's operation in practice.").

indication that the common understanding of "omits," which the Supreme Court took as requiring an entire income item to be missing, somehow shifted in the two decades between the passage of the 1934 Revenue Act and the 1954 Code.[6]  Second, any notion that Congress altered the meaning of the statute in 1954 is belied not only by its failure to modify the word "omits," but also by the Supreme Court's discussion of the 1954 legislation as being "in harmony" with its interpretation of the 1939 Code.  Again one might disagree with the latter observation,[7] but ultimately it leaves little room for this court to conclude that the modifications made in 1954, by adding sections 6501(e)(1)(A)(i) and (ii), somehow altered the meaning of the preexisting base provision.[8]  Moreover, contrary to the intimation in *CC&F* and several other cases, this court sees

---

[6]  Even today, the definition of "omit" is essentially the same as it was in 1934.  *See, e.g.*, The American Heritage Dictionary of the English Language 1227 (4th ed. 2000) ("to fail to include or mention; leave out"); Dictionary.com, http://dictionary.reference.com/browse/omit (as viewed on July 16, 2007) ("to leave out; fail to include or mention").

[7]  As noted by this court in *Grapevine Imports*, 71 Fed. Cl. at 342, "two features that were added by the 1954 Code to the language from section 275 of the 1939 Code buttress [the] claim" that the 1954 statute is different than its ancestor.  In this regard, this court explained –

> First, section 6501(e)(1)(A)(i) provides a gross receipts test similar to that adopted in *Colony*, but, by its terms, makes this test applicable only "[i]n the case of a trade or business."  To conclude, as plaintiffs do, that the *Colony* gross receipts test applies, under section 6501(e)(1), to every sort of sale is to render surplusage Congress' reference to that same test as applying "[i]n the case of a trade or business."  That result, however, would violate the canon that "a legislature is presumed to have used no superfluous words."  *Platt v. Union Pac. R.R. Co.*, 99 U.S. 48, 58, 25 L. Ed. 424 (1878).  Second, as part of the 1954 Code, Congress added a paragraph (2) to section 6501(e), which provides a rule covering estate and gift taxes, corresponding to the income tax rule.  That paragraph, however, unlike section 6501(e)(1)(A), specifically refers to the omission of "items" includible in the gross estate or total gifts, apparently to make clear that the six-year period was not to apply because of differences as to the valuation of property.  Of course, under other interpretative canons, the presence of the words "items" in paragraph (2) suggests that word ought not be implied into section 6501(e)(1)(A), as the latter refers only generally to omissions of "an amount" "from gross income."

*Id*.  Ultimately, however, this court cannot conclude that these additions to the statute somehow modified section 6501(e)(1)(A), which is precisely the same as the provision construed by the Supreme Court in *Colony*.

[8]  Indeed, other aspects of the 1954 legislative history support the Court's conclusion.  In 1954, Congress enacted a six-year period of limitations to cover estate and gift taxes.  This new

no basis for limiting the Supreme Court's decision to cases involving the sale of goods or services by a trade or business. To be sure, that was the factual setting in *Colony*. But, neither the Supreme Court's construction of the word "omits," its examination of the legislative history, nor the remainder of its *ratio dicendi* reasonably can be confined to that setting. *See Bakersfield Energy Partners*, 2007 WL 1712543, at *7 ("We do not believe that either the language or the rationale of *Colony, Inc.* can be limited to the sale of goods or services by a trade or business.").

In the case *sub judice*, the court afforded defendant the opportunity to demonstrate, at the evidentiary hearing, that something had been omitted from the returns at issue. But, defendant failed to do so – indeed, it withdrew the only expert witness who was to provide testimony in support of its position. Without that testimony, all defendant could show is that the plaintiffs here benefitted from the partnership's presumed overstatement of its basis, which, in turn, generated the loss at issue here. As defendant admits, the Tigues' 1999 return not only specifically claimed the loss at issue, but also listed, on Schedule D thereof, the basis in the partnership interests that defendant claims was overstated.[9] *Colony*, of course, specifically holds

---

provision, section 6501(e)(2) of the Code is, in critical regards, essentially identical to section 6501(e)(1)(A). As such, it is significant that Congress did not interpret the estate and gift tax provision as applying where there merely was difference of opinion as to the amount of tax owed. In this regard, S. Rep. No. 83-1622, at 584-85 (1954), indicated that this provision was not to apply owing to "an increase in the valuation of an item shown on the return." This passage clearly limits the scope of the term "omits" as used in this provision, suggesting that the same term used in section 6501(e)(1)(A) should not be construed as applying to every understatement of gross income. *See* Richards, *supra*, at 317-18 ("the Committee Reports indicate that the six-year rule with respect to estate and gift taxes is not to apply merely because of the difference of opinion of the taxpayer and Government as to the valuation of property").

[9]   Although arguably the best case for defendant, the First Circuit's decision in *CC&F W. Operations* is distinguishable. There, a first-tier partnership subject to the TEFRA audit rules was formed to facilitate the sale to an unrelated third party of a dozen second-tier subsidiary partnerships that owned and held real estate. By agreement of the parties, a portion of the sale proceeds was applied to satisfy the liabilities to which the real estate was subject. The sale resulted in a technical termination of the subsidiary partnerships, which accordingly filed final short-year returns that disclosed the sale. 273 F.3d at 404. The taxpayer-partnership reported the sale of "various partnership interests" on Form 4797 (Sales of Business Property) as part of its income tax return, but inadvertently understated both the aggregate basis of the partnership interests and the amount realized. The reported sales price was less than half of the total of the taxpayer's share of partnership liabilities as reflected on the Schedules K-1 of the subsidiary partnerships. The aggregate liabilities, in turn, were less than the actual sales price of the partnership interests. Construing section 6229(c)(2) of the Code, which, in critical terms, parallels section 6501(e)(1)(A), the First Circuit concluded that the taxpayer essentially had omitted an entire income item from its return – a payment made by the unrelated third party to discharge the first-tier partnership's indebtedness to a bank. On this basis, the court

-8-

that an overstatement of basis that results in an understatement of income does not trigger the extended statute of limitations in section 6501(e)(1)(A).  357 U.S. at 36 (statute does not apply "when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return").  And, as noted, the Tax Court recently reached the same conclusion in construing not only section 6501(e)(1)(A), but the analogous provision of section 6229(c)(2).  *See Bakersfield Energy Partners, LP*, 2007 WL 1712543, at *7; *see also Goodenow*, 238 F.2d at 22 (section 275(c) did not apply where overstatement of taxpayer's opening inventory resulted in understatement of gross profits); *Johnson v. Comm'r of Internal Revenue*, 32 T.C. 257, 259 (1959) (involving, in part, the alleged overstatement of cost basis on sold stock); *cf. Reis*, 142 F.2d at 903.  That the alleged overstated basis here produced a claimed loss, rather than a diminished gain, neither distinguishes these precedents nor the logic from which they spring – and defendant does not argue to the contrary.  Accordingly, the court sees no foundation for concluding that the six-year statute of limitations of section 6501(e)(1)(A) applies here.

Contrary to defendant's intimations, it is not for this court to decide whether this construction of section 6501(e)(1)(A) makes the most sense from a tax policy standpoint.  Indeed, it is far from evident that every sort of significant understatement of gross income ought to trigger a six-year statute of limitations.  Nonetheless, it is for Congress, not the courts, to change the law for policy reasons.  *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 456 (1984); *BankAmerica Corp. v. United States*, 462 U.S. 133, 140 (1983); *United States v. Great N. Ry. Co.*, 343 U.S. 562, 575 (1952) ("It is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written.").  Having considered the remainder of defendant's arguments, and finding them likewise unpersuasive, the court concludes that the proposed adjustments to the Tigues' 1999 taxable year are barred by the statute of limitations.[10]

One further matter remains – plaintiffs have asserted that if the assessment against the Tigues is barred for their 1999 taxable year, any assessment must also be barred as to their 2000 taxable year.  In particular, they asseverate that the losses carried forward to 2000 cannot be challenged if the event that generated those losses is in a barred year.  But, the Federal Circuit held otherwise in *Barenholtz v. United States*, 784 F.2d 375 (Fed. Cir. 1986), in which the taxpayer asserted that because assessments against them were barred for the years 1971 through

---

distinguished *Colony*, stating that it "did not involve the failure to include attributed income; rather, all receipts were disclosed and the taxpayer's only fault was an overstatement of basis," adding that "[i]n *Colony* there was no such omission and that was decisive; here, there was."  273 F.3d at 406.  Accordingly, while the First Circuit certainly questioned the Supreme Court's reasoning and the applicability of that reasoning to the 1954 provision, the court ultimately relied upon a factual ground that is absent from the case here.

[10]  Based on this holding, this court need not consider whether plaintiffs' various returns adequately disclosed features of the various transactions so as to trigger the safety-valve provision of section 6501(e)(1)(A)(ii) of the Code.

1974, defendant was barred from making adjustments to his income for those years that resulted in decreased business loss and charitable contribution carryovers to the years 1975, 1976, and 1977.  Rejecting that claim, the Federal Circuit stated –

> Barenholtz' argument is unsupported by the law.  Section 6501(a) bars assessments, not calculations, and no assessments were made for the years 1971 through 1974.  It is well settled that the IRS and the courts may recompute taxable income in a closed year in order to determine tax liability in an open year.

*Id*. at 380-81 (citing *Springfield St. Ry. v. United States*, 312 F.2d 754, 757-59 (Ct. Cl. 1963)).  A similar rule has been applied in other cases, some of which specifically involve loss carryforwards.[11]  Nor does the fact that this case involves a partnership and the specialized TEFRA provisions alter this rule, as this court recently demonstrated.  *See J&J Fernandez Ventures, L.P. v. United States,* 2007 WL 1703439, at *2667-68 (Fed. Cl. Apr. 3, 2007).[12]  Accordingly, that the assessment for 1999 is barred does not mean that the assessment for 2000 is likewise barred.

## III.  CONCLUSION

This court need go no farther.  For the foregoing reasons, the court **GRANTS,** in part, and **DENIES**, in part, plaintiffs' motion for summary judgment, and **GRANTS**, in part, and **DENIES**, in part, defendant's partial cross-motion for summary judgment.[13]  The court finds the

---

[11]  *See also Phoenix Coal Co. v. Comm'r of Internal Revenue*, 231 F.2d 420, 421 (2d Cir. 1956) (applying this rule to loss carryforwards); *Nat'l Forge & Ordnance Co. v. United States*, 151 F. Supp. 937, 941 (Ct. Cl. 1957) (same); *Crocker v. Comm'r of Internal Revenue*, 75 T.C.M. (CCH) 2414, 2440 n.37 (1998) (applying this rule to a charitable contribution carryover); *Angell v. Comm'r of Internal Revenue*, 52 T.C.M. (CCH) 939, 941 (1986), *aff'd without pub. op.*, 861 F.2d 723 (7th Cir. 1988) (same).

[12]  While plaintiffs contend that *Roberts v. Comm'r of Internal Revenue*, 94 T.C. 853, 857 (1990), is to the contrary, that case does not remotely address this issue.  Indeed, it employs a cramped view of section 6229 of the Code that has now been rejected by the Federal Circuit in *AD Global*, *supra*.  *See J&J Fernandez Ventures*, 2007 WL 1703439, at *2668 (discussing this point).  Notably, if plaintiffs were right about this issue, the IRS would be obliged to challenge transactions that allegedly established an inflated basis for an asset even if the tax ramifications of having that basis were not significantly realized until years later, when, for example, the asset was sold.  Nothing suggests that the law requires this.

[13]  In its earlier ruling in this case, the court mistakenly denied, in full, plaintiffs' motion for summary judgment, when it should have denied that motion only in part.  *See Grapevine Imports*, 71 Fed. Cl. at 343.  The court believes that the issue discussed herein can be decided as a matter of summary judgment because the nature of the court's reliance on *Colony* renders irrelevant the expert testimony received at the evidentiary hearing conducted herein.

assessment of tax against the Tigues for their 1999 taxable year is barred by the normal statute of limitations found in section 6501(a) of the Code.  Any assessments as to their 2000 taxable year are not barred.  On or before August 17, 2007, the parties shall file a joint status report indicating how this case should proceed, with a proposed schedule, as appropriate.

     **IT IS SO ORDERED**.

                 s/ Francis M. Allegra          
                 Francis M. Allegra
                 Judge